UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP BERRYMAN, and
HARRY T. RITCHIE,

        Plaintiffs,

v.

RANDALL HAAS,
HEATHER COOPER,
KRISTOPHER STEECE,
ERIN PARR-MIRZA,
AMIE JENKINS,
LISA ADRAY,
CAROLINE RIVARD-BABISCH,
JOHN DOES, and
JANE DOES,

        Defendants.

Case No. 17-cv-10762
Honorable Laurie J. Michelson
Magistrate Judge Patricia T. Morris

---

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [32]

---

Plaintiffs Philip Berryman and Harry Ritchie believe that their health conditions require them to have their own prison cell. They say that Defendants, various personnel at the Michigan Department of Corrections' Macomb Correctional Facility (MRF), are depriving them of a single-person cell because they helped another inmate with a lawsuit. Plaintiffs thus bring a First Amendment retaliation claim. Plaintiffs also say that the space, safety, sanitation, and privacy issues caused by having a cellmate means that their incarceration in a two-person cell amounts to cruel and unusual punishment in violation of the Eighth Amendment.

Defendants say that the Court does not have to reach the merits of these two claims. In particular, they move for summary judgment on the grounds that Plaintiffs did not administratively exhaust remedies for the claims they present in this lawsuit. (*See* R. 32.)

Under the Prison Litigation Reform Act, a prisoner cannot bring a claim to federal court "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust available remedies, Plaintiffs must complete the grievance process set by the Michigan Department of Corrections. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). This (typically) means obtaining a decision at "Step III," the third and last step of MDOC's grievance process. (*See* R. 32, PID 318.) The failure to exhaust is an affirmative defense, so, on summary judgment, Defendants must convince the Court that, even accepting Plaintiffs' version of the facts, no reasonable jury could find that Plaintiffs exhausted their claims. *See Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012).

The Court begins with Defendants' assertion that Berryman's claims in this lawsuit are unexhausted. It then turns to their like assertion about Ritchie's claims.

## I.

Based on just MDOC's evidence, Berryman did not ever grieve the claims he presents in this case through the last step of MDOC's grievance process. MDOC maintains an electronic database of every appeal of a grievance to Step III that it receives. (*See* R. 32, PID 321.) This database shows that MDOC has received only one Step III grievance from Berryman pertaining to events at MRF. (R. 32, PID 332.) And that grievance was for back pay for a prison job. (R. 32, PID 345.) So no reasonable jury could find that Berryman's claims premised on the deprivation of a single-person cell are exhausted—unless Berryman has presented sufficient contrary evidence.

To this end, Berryman points to a grievance he filed in May 2015. (*See* R. 40, PID 381.) That grievance was "against MRF health care staff doctor and [physician's assistant] for refusal to reissue a single man accommodation [special accommodation notice]." (R. 47, PID 421.) As

relief, Berryman sought a "permanent[]" accommodation for a single-person cell. (*Id.*) In June or July 2015, that grievance was resolved; according to the Step I grievance response, "Grievant states that he has a single man cell and is satisfied." (R. 47, PID 419.) Berryman argues that because the grievance was resolved at the first step of the process, there was no reason to appeal it through the third. (*See* R. 40, PID 381.) Berryman thus maintains that he exhausted his administrative remedies before filing this lawsuit. (*Id.*)

Berryman is correct that "a prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (quoting 42 U.S.C. § 1997e(a)); *see also White v. Bukowski*, 800 F.3d 392, 395 (7th Cir. 2015) ("[H]ow could a prisoner be expected to file a grievance that would be academic because no response would benefit him or her in the slightest?"). And courts have found that when a prison resolves a grievance by promising to do something, but then reneges on its promise, the prisoner need not exhaust a second grievance—the issue is deemed exhausted. *See Yowell v. Booker*, No. 13-10029, 2014 WL 1096398, at *6 (E.D. Mich. Mar. 19, 2014); *Manning v. Dolce*, No. 09-13840, 2010 WL 3515718, at *4 (E.D. Mich. July 12, 2010), *report and recommendation adopted*, 2010 WL 3515715 (E.D. Mich. Sept. 8, 2010).

But unlike the situation in *Brown*, MDOC has not given, or indicated it has given, Berryman all "available" relief. Arguably that was true in July 2015 (but even then Berryman did not receive a "permanent" accommodation for a single-person cell). By February 2017, however, Berryman no longer had his own cell. So he could have grieved that issue to obtain one. And, unlike *Yowell* and *Manning*, this is not a situation where, after promising to provide Berryman relief, MRF did not follow through on its promise. MRF provided Berryman a single-person cell

for over a year-and-half. Indeed, the rationale underlying *Yowell* and *Manning* appears to be that because the prison cut short the grievance process by stating that it would grant relief, but then did not provide the relief, the prison effectively thwarted the prisoner's attempt to exhaust and rendered "administrative remedies" not "available." *See* 42 U.S.C. § 1997e(a). There is no indication that in granting a single-person cell in July 2015 and then revoking it in February 2017, MRF was thwarting the grievance process.

And aside from those distinctions, a reasonable jury could not find that the May 2015 grievance gave MRF a fair opportunity to resolve that claim before this Court got involved. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006) ("The PLRA . . . seeks to affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." (internal quotation marks and citation omitted)). In the May 2015 grievance, Berryman did not assert that one of the reasons he needed a single-person cell was because he disimpacted his feces on a regular basis. (*See* R. 47, PID 421.) Yet that is a primary basis for his Eighth Amendment claim here. And, based on their testimony (at the preliminary injunction hearing), neither Kim Farris, the physician's assistant who evaluated Berryman for a single-person cell in March 2017, nor Heather Cooper, the Health Unit Manager at MRF, knew prior to this lawsuit that Berryman had been disimpacting his feces four to five times a week. (*See also* R. 23, PID 170 ("In regards to his claim of using his hands/fingers to do this it was the first time he has ever mentioned this to me.").) Had Berryman filed a grievance in February 2017 that included that fact, MRF might have given him a single-person cell. A policy directive suggests that regular disimpacting could warrant a single-person cell. (*See* R. 23, PID 176 ("Medical conditions which <u>may</u> require a single person cell are . . . [p]araplegic patient with colostomy and/or ureterostomy—*sanitation issues may support need*." (emphasis added)).) And Farris suggested

during her testimony that disimpacting, while not the only consideration, would favor a single-person cell. As such, the May 2015 grievance did not provide Defendants with a fair opportunity to resolve the Eighth Amendment claim Berryman brought to federal court.

Berryman alternatively argues that two provisions of MDOC's grievance policy prohibited him from exhausting administrative remedies. (*See* R. 40, PID 381–82.) One is the following: "Two or more prisoners and/or parolees may not jointly file a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue as an organized protest. Such grievances shall be rejected by the grievance coordinator." (R. 32, PID 313.) From Berryman's perspective, he and Ritchie "have what would be called identical issues." (R. 40, PID 381.)

No reasonable jury could find that MDOC's prohibition on identical grievances rendered administrative remedies not "available" to Berryman. *See* 42 U.S.C. § 1997e(a). As an initial matter, Ritchie and Berryman have different medical histories and somewhat different medical conditions (Berryman disimpacts several times a week while Ritchie suffers from incontinence and does not appear to disimpact with the same regularity). Moreover, Ritchie lost his single-cell provision (and grieved that issue) in August 2016, while Berryman lost his single-cell provision in February 2017. So it is doubtful that Berryman and Ritchie would have submitted "identical" grievances. And even if they would have, no reasonable jury could think that the grievance coordinator would have rejected their two grievances as "an organized protest." As such, the prohibition on grievances to which Berryman points does not excuse his failure to exhaust. *See Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) ("[T]his court has required a prisoner to make affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." (internal quotation marks omitted)).

Berryman also points to this portion of MDOC's grievance policy directive: "A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant. If a CFA prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum[.]" (R. 32, PID 313; *see also* R. 40, PID 381.) Berryman says he "took [his] issue to the Warden's Forum on 02-07-2017." (R. 40, PID 382.)

Berryman's reliance on this provision is misplaced: he does not seek to change the language of any MDOC policy. He instead argues that under his interpretation of MDOC policy on single-person cells, he is entitled to one. (R. 1, PID 11; R. 28, PID 249.) But, as this Court understands it at least, Berryman does not claim that the policy on its face (as opposed to as applied to him) is unlawful. So no reasonable jury could think that MDOC's prohibition on grieving "the content of policy or procedure" meant administrative remedies were not "available" to Berryman. *See* 42 U.S.C. § 1997e(a).

In sum, MDOC has produced strong evidence showing that Berryman took only one grievance through the final step of the process while he was at MRF. And that grievance did not raise the issues presented in this lawsuit. And no reasonable jury could find that the 2015 grievance rendered further administrative relief not "available" or that it gave Defendants fair notice of the factual bases for the claims in this lawsuit. And no reasonable jury could find that MDOC's grievance policy directive made the grievance process not "available" to Berryman. As such, MDOC is entitled to summary judgment on Berryman's claims that he did not exhaust administrative remedies.[1]

_____

[1] In his complaint, Berryman makes unclear references to the grievance coordinator at MRF ("E. Taylor") either refusing to process or rejecting certain grievances. But he has not mentioned this issue in his response to Defendants' motion (or in his improperly filed sur-reply) let alone offered additional proof of the grievance coordinator's actions. Instead, Berryman has elected to argue that the 2015 grievance exhausted his administrative remedies and, in the

## II.

The Court reaches a different conclusion as to Ritchie.

In August 2016, Ritchie filed two grievances for a single-person cell. In one, which the Court refers to as the "1519" grievance, Ritchie asserted that Defendant Amie Jenkins had told Defendant Heather Cooper to "cancel" his single-person cell detail because she did not care that Ritchie had to insert catheters or had to wear "incontinence garment[s]." (R. 47, PID 427.) As a resolution, Ritchie sought to have his "detail for single person room be honor[ed]." (*Id.*) In the other grievance, which the Court refers to as the "1520" grievance, Ritchie made similar assertions and sought similar relief. (*See* R. 47, PID 433.) Both grievances were denied on the merits. (R. 47, PID 428, 434.)

Ritchie then appealed to Step II. (R. 47, PID 425, 431.) Both appeals were denied on the merits. The denial of the 1520 grievance appeal was returned to Ritchie on October 5, 2016 (R. 47, PID 431–32) and the denial of the 1519 grievance appeal was returned to Ritchie the next day (R. 47, PID 425–26).

About a week later, on October 13, 2016, Ritchie was taken to the hospital (Dwayne Waters Health Center) for possible malnutrition and lower extremity weakness. (R. 23, PID 205, 209.) He remained hospitalized until December 5, 2016. (R. 23, PID 209.) Plaintiffs claim that while at the hospital a prisoner has "NO mail or visiting privileges." (R. 40, PID 383.)

Although there are two dates on Ritchie's Step III appeal forms, one of which is written over, it appears Ritchie appealed both grievances to Step III on December 30, 2016. (R. 47, PID 425, 431.) Ritchie explained in his appeals that he had only received the Step II responses after being released from the hospital. (*See* R. 47, PID 431; R. 47, PID 425.)

---

alternative, MDOC's policy directive precluded a grievance. The Court has thus limited its analysis accordingly.

For unexplained reasons (perhaps because Ritchie did not in fact file his Step III appeals until much later than December 30, 2016), MDOC's Grievance and Appeals Section did not receive Ritchie's Step III appeals until February 10, 2017. (R. 47, PID 425, 431.) The Step III appeal of the 1519 grievance was apparently rejected (the record is *not* clear on this point), and the rejection was mailed to Ritchie on March 9, 2017. (R. 47, PID 424.) The Step III appeal of the 1520 grievance was rejected as untimely (the record *is* clear on this point), and the rejection was mailed to Ritchie on March 28, 2017. (R. 47, PID 430.)[2]

The two March dates are significant. Because Plaintiffs signed their complaint in this case on February 28, 2017 (and the complaint was not docketed with this Court until March 7, 2017), Defendants point out that Ritchie filed suit before MDOC had even mailed the two Step III responses to him. (R. 32, PID 307.) As such, Defendants argue that Ritchie did not exhaust his administrative remedies before filing this lawsuit.

Defendants are correct that Ritchie did not wait for his Step III responses before filing this lawsuit. And it is possible that the Step III responder would have given Ritchie the relief he sought. In any event, the law says that a prisoner must exhaust his administrative remedies

---

[2] In their reply brief, Defendants suggest that because of Ritchie's hospital stay, MDOC elected not to reject his grievances as untimely and instead "decided [them] on the merits." (R. 47, PID 414.) As to the 1520 grievance, this is flatly incorrect. (R. 47, PID 430 ("this grievance is untimely filed by the grievant. . . . Grievance rejected").) As to the 1519 grievance, Defendants' assertion is more debatable. The database says that the grievance was "denied" (as opposed to "rejected"), which supports Defendants' position. (R. 32, PID 323.) But the Step III response indicates that the 1519 grievance was not reviewed by "Administrator of the Bureau of Health Care Services" and that is the entity that would provide a substantive response to a medical grievance. (R. 32, PID 318.) Further, although the Step III response says "upheld," which suggests a denial (because Step II was a denial), more completely, the Step III response says "rejection is upheld," which suggests a rejection. (R. 47, PID 424.) In any event, to the extent that MDOC is attempting to use the fact that the 1519 and 1520 grievances were denied on the merits to win summary judgment (*see* R. 47, PID 430), the facts are to be viewed in the light most favorable to Ritchie. So for purposes of summary judgment, the 1519 and 1520 grievances were rejected.

before he files suit—not while the suit is pending. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

Even so, the Court believes that a reasonable jury could find that Ritchie exhausted his administrative remedies. For purposes of summary judgment, the issue of the written-over date must be resolved in Ritchie's favor. So the Court must assume Ritchie filed his two Step III appeals on December 30, 2016. And if that is true, it means that Ritchie only signed his complaint after waiting for 60 days (or 59 and some change) for a Step III response. A prisoner need not wait around forever for a grievance response—otherwise a prison could forestall suit indefinitely. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA so narrowly as to permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances." (internal quotation marks and alterations omitted)); *Jarrett v. Snyder*, No. 1:13-CV-139, 2014 WL 4472732, at *2 (W.D. Mich. Sept. 10, 2014) ("Defendants' argument that Plaintiff should have simply waited for a response before filing his complaint—no matter how long that response took—is unavailing."); *cf. Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) ("[W]e conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.").

True, 60 days is not forever, but a jury could find that it was long enough in this case. MDOC's grievance policy directive contemplates that the "total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days." (R. 32, PID 316.) And given the time that MDOC is given to respond to a Step I and Step II grievance (15 business days each) and the time that the prisoner is given to appeal to Step II and to Step III (10 business days each), the policy directive contemplates that

MDOC will typically have about 60 of the 120 calendar days left to respond to a Step III appeal. (*See* R. 32, PID 316–18.) And Ritchie only signed his complaint on the 60th day. In other words, Ritchie could have expected a response on (or before) February 28, 2017, and having not received one, signed his complaint that day.

Nor does broadening the focus to the entire grievance process help Defendants. To be sure, MDOC should not be penalized for the 85 or 86 days between their October 5 and October 6, 2016 denials of Ritchie's Step II appeals and Ritchie's appeal to Step III on December 30, 2016. But even cutting 86 days out, the total time between the date Ritchie filed the two grievances (August 6, 2016) and the date Ritchie signed his complaint (February 28, 2017) is 120 days. *See Brown v. Prelesnik*, No. 1:12-CV-873, 2014 WL 632093, at *5 (W.D. Mich. Feb. 18, 2014) ("[I]f prison officials fail to respond to an inmate's Step III grievance by the end of the aforementioned 120 day period, the inmate may likely be able to initiate, without fear of dismissal on exhaustion grounds, an action in federal court.").

The grievance policy directive does provide that the grievance process must "generally" be completed within 120 calendar days and so it contemplates that the process might sometimes take longer. But one of the situations where it takes longer does not apply here—the grievance coordinator did not, as the policy contemplates, provide MRF written extensions of time to respond. (*See* R. 32, PID 316.) Moreover, this Court finds applicable here the rule proposed by another court: the grievance process must be completed by 120 days unless a good reason is provided for why it was not. *See Jarrett v. Snyder*, No. 1:13-CV-139, 2014 WL 4472728, at *7 (W.D. Mich. Aug. 20, 2014) ("By failing to enact a coherent deadline for exhaustion of prisoner grievances, MDOC has placed itself in the position of having to justify why it failed to issue a Step III response within the 'general completion time' of 120 days."), *report and*

*recommendation adopted in part*, 2014 WL 4472732 (W.D. Mich. Sept. 10, 2014). Defendants have provided no such reason, and, given that MDOC did not provide a substantive response to either of Ritchie's Step III appeals, the Court doubts there is one.

Defendants also argue that Ritchie only named Defendant Jenkins in his grievances and so his claims against the rest of them are unexhausted. (R. 47, PID 414–15.) Aside from the fact that Ritchie also arguably named Cooper (R. 47, PID 433), this Court declines to consider this argument because Defendants did not fairly present it in their motion for summary judgment but instead raised it in their reply brief. *See Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 51–52 (D.D.C. 2015) ("[I]t is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief."). This aspect of Defendants' summary-judgment motion is thus denied without prejudice.

In short, the Court finds that Defendants are not entitled to summary judgment on the grounds that Ritchie did not exhaust administrative remedies.

\* \* \*

In sum, the Court finds that no reasonable jury could find that Berryman exhausted (or could not exhaust) "administrative remedies as [were] available." 42 U.S.C. § 1997e(a). Berryman's claims will thus be DISMISSED WITHOUT PREJUDICE. It follows that the temporary restraining order entered on July 14, 2017 (R. 54) and extended on July 28, 2017 (R. 55), is hereby TERMINATED. As for Ritchie, MDOC has not shown that no reasonable jury could find that he exhausted all available administrative remedies before filing this lawsuit.

MDOC's motion for summary judgment (R. 32) is thus GRANTED IN PART and DENIED IN

PART.

      SO ORDERED.

s/Laurie J. Michelson      
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

Dated: July 31, 2017

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2017.

s/Keisha Jackson     
Case Manager
