UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PHILIP BERRYMAN, and<br>HARRY T. RITCHIE,<br><br>      Plaintiffs,<br><br>v.<br><br>RANDALL HAAS,<br>HEATHER COOPER,<br>KRISTOPHER STEECE,<br>ERIN PARR-MIRZA,<br>AMIE JENKINS,<br>LISA ADRAY,<br>CAROLINE RIVARD-BABISCH,<br>JOHN DOES, and<br>JANE DOES,<br><br>      Defendants. | Case No. 17-cv-10762<br>Honorable Laurie J. Michelson<br>Magistrate Judge Patricia T. Morris |

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [9]**

Plaintiffs Philip Berryman and Harry Ritchie, currently inmates at the Macomb Correctional Facility (MRF), say they need a single-person cell. Berryman is a paraplegic, requires the use of a wheelchair, and due to bowel issues must manually extract feces from his rectum four to five times each week. Ritchie has at times been prescribed a wheelchair, occasionally soils himself because he has difficulty controlling his bowels, and must manually remove feces two or three times each month. Both Berryman and Ritchie assert that having a cellmate creates sanitation, space, safety, and privacy problems. They say that sharing a cell means they when they address their bowel problems, they are exposed to their cellmates' germs. They also say that MRF cells provide inadequate space for two inmates—when one is confined to a wheelchair. They claim that they are at heightened risk of assault at the hands of their

cellmates because their bowel issues upset their cellmates and their physical conditions make them vulnerable to attack. Plaintiffs also maintain that being forced to disimpact their feces (and, in Ritchie's case, soil himself) when another inmate in their cell is humiliating.

Plaintiffs ask this Court to preliminarily enjoin Defendants from depriving them of a single-person cell. (R. 9.) Plaintiffs' motion was referred to Magistrate Judge Patricia T. Morris who, on a very limited record, recommended that this Court grant Plaintiffs a temporary restraining order. (R. 19.) After reviewing her report, this Court held a telephone conference with the parties, received further briefing and documentation, and held an evidentiary hearing. In a separate opinion and order, this Court dismissed Berryman's claims from this suit because he failed to exhaust administrative remedies. This opinion thus only addresses Ritchie's request for preliminary relief. As the record now stands, Ritchie has not shown that he is likely to succeed at trial or that he is likely to suffer irreparable harm between now and when this case is finally resolved. For these reasons and ones provided below, the Court will not grant preliminary relief.

## I.

### A.

In June 2016, Ritchie was transferred to MRF. (*See* R. 23, PID 181.) Around the time of his transfer, Ritchie's special accommodation orders included a wheelchair ("permanent") and a "[b]arrier free/wheelchair accessible" cell. (R. 28, PID 264.)

In July 2016, Ritchie went to MRF healthcare. (R. 23, PID 191.) He had just ended a 42-day hunger strike (at least his sixth since January 2012 (*see* R. 23, PID 203)) and was concerned that he had a "permanent" gastrointestinal problem. (R. 23, PID 191.) Ritchie told the nurse that since he started eating again, he had been unable to sense the need to defecate and was soiling himself on a daily basis. (*Id.*) Ritchie also reported that his frequent soiling was starting to cause

problems with other inmates and his cellmate. (*Id.*) Dr. Maimoona Husain provided Ritchie with Depends, an incontinence brief. (R. 23, PID 194.)

In late July 2016, Ritchie was provided with a single-person cell accommodation for a brief period. A nurse at MRF ordered Ritchie a single-person cell for five days and then renewed the accommodation, noting that it was "for sanitary health." (R. 23, PID 197; R. 28, PID 265.) But on July 28, 2016, Dr. Husain updated Ritchie's medical chart: "inmate do[es] not have cr[i]t[e]ria for single men room[;] it is denied at present." (R. 23, PID 198.)

In August 2016, Defendant Amie Jenkins put another prisoner in Ritchie's cell. (R. 1, PID 29.) According to Ritchie, "when I complained that I was not going to have to be nude in front of another prisoner while I cleaned myself up from my bow[e]ls messing up my bed and cloth, I was placed in Segregation, where I remained for (42) days." (R. 1, PID 29.)

In mid-September 2016, Physician Assistant Marianne McKissick (along with a nurse and MRF "custody" staff) visited Ritchie in segregation. (R. 23, PID 203–04.) Although Ritchie had been protesting the loss of his single-person cell accommodation via another hunger strike, he told McKissick that he felt "fine." (R. 23, PID 200–02.) McKissick discontinued Ritchie's incontinence briefs because Ritchie was not eating, and thus, not defecating. (R. 23, PID 204.) She noted, "Incontinence was self reported by the inmate and has not been witnessed." (*Id.*) McKissick also discontinued Ritchie's wheelchair accommodation. She wrote, "An extensive review of the patients EMR and MDOC paper chart was performed. NO DIAGNOSTIC EVIDENCE can be found TO SUPPORT THE INABILITY TO AMBULATE." (R. 23, PID 203.)

Ritchie alleges that on September 28, 2016, in an attempt to resolve a grievance he had filed about not having a single-person cell, Warden Randall Haas and Deputy Warden Kristopher

Steece (both defendants in this case) went to visit Ritchie. (R. 1, PID 29–30; R. 47, PID 426.) Although Ritchie's allegations are not clear, he apparently explained to Haas and Steece that McKissick had eliminated his single-person cell accommodation at the request of Jenkins. (R. 1, PID 30.) Haas then allegedly told Ritchie that he had spoken with Health Unit Manager Heather Cooper, and that Defendant Cooper had said that the single-person cell accommodation had been canceled after Cooper had spoken with Jenkins. (R. 1, PID 30.) Steece also allegedly informed Ritchie that he had spoken with McKissick and Cooper about the single-person cell. (R. 1, PID 30.)

On October 13, 2016, Ritchie was transferred to Dwayne Waters Health Center, a hospital, for about 53 days. (R. 1, PID 31; R. 23, PID 205, 209.) According to Ritchie, "I could not clean myself or change my clothing and became sick to the point that I was taken to the Hospital." (R. 1, PID 29.) The intake physician noted, "The patient just simply states he has been feeling weak in the lower extremities and hasn't been eating but has been drinking water." (R. 23, PID 206.) The physician further noted, "Because there are many inconsistencies in his ability to ambulate, Dr. Borgerding has suggested close monitoring prior to providing and reissuing a wheelchair." (R. 23, PID 206.)

On December 5, 2016, Ritchie was discharged from Dwayne Waters. (R. 23, PID 209.) The discharge summary provided that an EMG of Ritchie's lower extremities was normal and that "[l]umbar spine was done without any evidence of disc herniation." (R. 23, PID 209.)

The next day, back at MRF, McKissick evaluated Ritchie. (R. 23, PID 211.) McKissick, referring to a hospital record, noted that Ritchie had not performed any self-catheterizations during his stay at Dwayne Waters and that his EMG had been unremarkable. (R. 23, PID 211.)

McKissick thus concluded that Ritchie was not to be provided with catheters or a single-person cell. (*Id.*) She noted, "Patient has frequent hunger strikes as a form of manipulation." (*Id.*)

On December 24, 2016, Ritchie was placed in a Level IV cell, i.e,. high-security cell, with another inmate. According to Ritchie, "[I] was assault by the other prisoner who had been taking my property and forcing himself upon me." (R. 1, PID 31; *see also* R. 1, PID 29.) At the preliminary-injunction hearing, Ritchie stated that he was assaulted because he had "used the bathroom on [him]self." Ritchie also indicated that his eye and mouth were injured in the attack and that he went to the hospital for his injuries.

A few days later, MRF moved Ritchie to another cell with a different inmate, Pierre Howard. (R. 36, PID 357; *see also* R. 1, PID 29, 31.) Howard avers, "The first night Ritchie was in the room he told me that he had to use catheters and remove feces from himself, I didn't know what he meant until I smelled what . . . was [f]eces and [u]rine[;] I looked down at prisoner Ritchie and he was laying in bed there was feces on the bed on a plastic bag and the smell of [u]rine. I asked him what he was doing and pulled the blanket over himself." (R. 36, PID 357.) "The next day," says Howard, "[Ritchie] could not look me in the eye." (R. 36, PID 357.) According to Ritchie, "Plaintiff has been unable to clean himself, without having to give up eating on days that he needs to clean himself, in that he has to wait until [Howard] goes to eat and Plaintiff then tries to complete his cleaning and changing his Depends and removing the feces from his body cavity." (R. 1, PID 31.) Howard adds, "[a]t times when Ritchie wanted to use the room I would leave but the smell is always there." (R. 36, PID 357.) As of the end of May 2017, Howard was still Ritchie's cellmate and had not assaulted Ritchie.

5

**B.**

**1.**

On April 6, 2017, Plaintiffs' motion for a temporary restraining order and preliminary injunction was docketed with the Court. (R. 1, 9.) Plaintiffs asked this court to enjoin Defendants from denying them a single-person cell. (R. 9, PID 80.) Berryman and Ritchie alleged that without a single-person cell, Defendants were "forc[ing] [them] to endure humiliation, mental pain and physical pain in front of other prisoners" and exposing them to "[a]ssaults and [p]ossible [r]apes" at the hands of their cellmates. (R. 9, PID 84.)

This Court immediately referred Plaintiffs' ex-parte motion to Magistrate Judge Patricia T. Morris. Construing Plaintiffs' complaint as asserting violations of the First and Eighth Amendments (R. 19, PID 112), the Magistrate Judge found that Plaintiffs had a "fairly high likelihood of success" of showing an Eighth Amendment violation (*id.* at PID 117). In particular, she credited Plaintiffs' allegations that single-person cells were necessary to "relieve pain and to ensure habitable sanitary conditions." (R. 19, PID 114.) The Magistrate Judge recommended that this Court grant Plaintiffs a temporary restraining order. (*See* R. 19.)

Two days after Magistrate Judge Morris entered her report and recommendation, this Court held a telephone status conference with the parties. (*See* R. 20.) At the conference, Defendants stated that they intended to object to the Magistrate Judge's report and recommendation. Plaintiffs stated that they were willing to be without single-person cells until this Court could address both those objections and the preliminary-injunction portion of their motion. After reviewing the subsequent briefing and expanded record, the Court believed that a limited evidentiary hearing would help it reach the right decision. The Court held that hearing on May 31, 2017.

**2.**

At the preliminary-injunction hearing, Ritchie offered further insight into his need for a single-person cell.

For one, Ritchie spoke about how he soils himself. Although MRF healthcare has provided Ritchie with Depends, Ritchie stated that they do not work. In particular, Ritchie said that the Depends he had been provided were not made to hold feces, "it's like a little strip," and so when he defecates "it run[s] all down [his] legs and everything." Ritchie explained, "when I go on myself, it's my sheets, bed, all that get soiled." Ritchie stated that his cellmate's knowledge of his involuntary bowel movements would cause him to "suffer humiliation and have them running around saying you're [defecating] on yoursel[f]."

At the hearing, Ritchie also stated that two or three times per month, he must manually remove (i.e., disimpact) feces from his rectum. (*See also* R. 43, PID 396 ("I do self evacuate several times a month.").) He suggested he might have to disimpact more frequently, except that when he was hospitalized, he was provided medication that "loosen[ed] it up" and that he continues to consume Lactulose (a synthetic sugar used to treat constipation). In describing the disimpacting process, Ritchie explained, "sometimes I have to take a plastic spoon to dig up inside myself to try to get feces broken up to push out."

Although unclear if he was referring to disimpacting or cleaning up after soiling himself, Ritchie also expressed a concern over sanitation: "When you got your cavities open you really don't want to be trying to have some someone else in the room when you're cleaning yourself. Then it's more germ from another human being in a room who got sweat and all this stuff. . . . [W]hen your bowels are bleeding and all this stuff it's better to be in room by yourselves so you don't have to worry about it. Where somebody coming in and badger you about your sickness."

Ritchie also stated that he needed a single-person room for safety reasons. He explained that his Level IV cellmate had assaulted him because he had soiled himself. According to Ritchie, "I constantly be arguing with other inmates because they don't want to be in a room with a guy like that." He also described an incident in October 2016 where a different cellmate had "grabbed [him] and pushed [him] against the wall in [his] wheelchair." Ritchie explained that prison life was different than on the outside: "In there, them guy's don't care. They jump on you."

At the hearing, Plaintiffs also asserted that having a cellmate created issue with space given the limited size of the cells at MRF. Berryman pointed out that the cells at MRF, which house two desks, foot lockers, and a bunk bed, are only approximately seven feet wide by ten feet long. (*See also* R. 36, PID 369.) Berryman stated that when he sits at his desk in his wheelchair, only a few inches separate the back of his wheelchair and his cellmate's desk. (*See also id.*) Plaintiffs maintain that there is simply not enough room for two inmates in an MRF cell when one must operate a wheelchair. (*See* R. 46, PID 407.)

## II.

Although a report and recommendation is pending, Magistrate Judge Morris only recommended that this Court issue a temporary restraining order—she did not (and had no reason to) reach the question of whether a preliminary injunction should issue. Further, Defendants have objected to the Magistrate Judge's finding that Plaintiffs are likely to succeed on their Eighth Amendment claim. (*See* R. 23.) Additionally, the factual record before this Court is much more developed than it was before the Magistrate Judge (she only had Plaintiffs' side of the story). For all these reasons, the Court addresses Ritchie's request for a temporary restraining order and preliminary injunction without deferring to the Magistrate Judge's report and

recommendation. *See* 28 U.S.C. § 636(b); *Thomas v. Arn*, 474 U.S. 140, 154 (1985) ("[W]hile the statute does not require the [district] judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard."). (This Court, however, appreciates Magistrate Judge Morris' expeditious handling of the matter.)

"In addressing a motion for a preliminary injunction, a court should consider: (1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). Ultimately, the grant or denial of injunctive relief is left to this Court's discretion. *Wilson v. Gordon*, 822 F.3d 934, 952 (6th Cir. 2016).

### III.

### A.

To address the likelihood that Ritchie will succeed at trial, it is necessary to identify his legal claims. Although Plaintiffs' complaint sets forth several counts, the titles of the counts, and many of the assertions in the counts, appear to be from another case. (*See* R. 1, PID 19–28, 37–45 (referencing substantive due process, procedural due process, destruction of evidence relevant to "Plaintiff's defense," failure to disclose "exculpatory evidence," denial of a single-cell room without "probable cause under the Fourth Amendment").) As noted, the Magistrate Judge construed the complaint as raising claims under the First and Eighth Amendments of the Constitution. (R. 19, PID 112.) Not only have Plaintiffs not objected to this characterization, they reference the First and Eighth Amendments in urging this Court to adopt the Magistrate Judge's

9

report. (*See* R. 28, PID 242 (claiming that a jury would be able to find "both Retaliation and deliberate indifference").) Accordingly, the Court considers whether Ritchie is likely to persuade a jury that Defendants violated his rights under the First Amendment and Eighth Amendment.

1.

The Court begins with Ritchie's First Amendment claim. Plaintiffs assert that Jenkins and Steece retaliated after Plaintiffs helped another prisoner, Derrick Palmer, file a lawsuit against Steece, Jenkins, and others. (*See* R. 1, PID 9; R. 43, PID 394.) Ritchie says that "Jenkins and Steece started off the retaliation by first having [my] [w]heelchair taken." (R. 9, PID 88.) Ritchie also refers to an event on October 4, 2016, where a corrections officer wrote him a misconduct ticket for crawling on the floor to reach the bathroom. (R. 9, PID 88; R. 1, PID 30–31.) When Ritchie asked the officer why he was receiving a misconduct ticket, the officer said that Warden Haas and Deputy Warden Steece had ordered it. (R. 1, PID 31.) Apparently, Ritchie believes the retaliation continued from that point, which included depriving him of a single-person cell.

Based on the current record, Ritchie is not likely to succeed on his First Amendment claim. As an initial matter, timing does not support Ritchie's theory. Notably, Ritchie's single-cell accommodation was terminated on July 28, 2016 and his wheelchair accommodation was terminated on September 15, 2016. (R. 23, PID 198, 203.) But the *Palmer* lawsuit was not even signed until later, on October 3, 2016. *See Palmer et al v. Elrod et al.*, No. 16-13665 (E.D. Mich. 2016), ECF No. 1, PID 3. It would be odd that Steece and Jenkins would retaliate before they were even sued—unless they were somehow aware that Palmer was preparing to sue. But Ritchie has not produced any evidence of that. Nor has he produced evidence as to when he (or Berryman) helped Palmer and when Defendants learned that fact. Second, part of Plaintiffs' theory is that Steece had a "special relationship" with Cooper, and Cooper was involved in

10

taking away their single-person cells. (R. 1, PID 9.) But Cooper testified at the preliminary-injunction hearing that she had no special relationship with Steece. Third, Ritchie has not shown that Palmer needed help to file a lawsuit. As such, it is not even clear that Ritchie engaged in conduct that the First Amendment protects. *See Evans v. Vinson*, 427 F. App'x 437, 445 (6th Cir. 2011).

In short, on the current record, Ritchie has not demonstrated that he is likely to succeed on the merits of his First Amendment claim.

## 2.

Ritchie's Eighth Amendment claim is stronger. The Court has some concern that Defendants are forcing Plaintiffs to suffer an indignity that the Eighth Amendment prohibits.

The Eighth Amendment prohibits prison officials from depriving an inmate of "the minimal civilized measure of life's necessities." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotation marks omitted). And it "draws its meaning from the evolving standards of decency that mark the progress of a maturing society," *Hudson*, 503 U.S. at 8 (internal quotation marks omitted). "Fundamentally, the concept underlying the Eighth Amendment is nothing less than the dignity of humankind." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (internal quotations and alterations omitted).

Plaintiffs' statements at the preliminary-injunction hearing and in their affidavits reflect that if they are forced to regularly disimpact or soil themselves in front of their cellmate, they would suffer considerable humiliation. Ritchie says that given his difficulties with his bowels, having a cellmate would cause him to "suffer humiliation and have [other inmates] running around saying you're doing this on yoursel[f]." Ritchie's claim of humiliation is backed by his conduct: he waits until Howard goes to eat to "chang[e] his Depends and remov[e] the feces

from his body cavity." (R. 1, PID 31.) And Howard has averred that the first time he saw Ritchie engaging in this process, Ritchie "pulled the blanket over himself" and, the next day, "could not look [Howard] in the eye." (R. 36, PID 357.) Berryman also says that one reason he needs his own cell is to avoid the "humiliation of [disimpacting his feces] in front of another person."

Precedent also indicates that the indignity a prisoner experiences when he is forced to soil his clothing in front of another prisoner (or has to disimpact his feces in front of another prisoner) is an affront to the Eight Amendment. In *Hazelton v. New Hampshire Department of Corrections*, the court addressed a situation where an inmate could only delay defecating for about five minutes and the prison was either not promptly providing nearby bathroom access or requiring the inmate to terminate his activities (e.g., visitation) so he could promptly return to the bathroom in his unit. *See* No. 08-CV-419-JL, 2009 WL 229664, at *2–4 (D.N.H. Jan. 27, 2009). The inmate had, on at least a few occasions, defecated on himself. *Id.* at *2, 3. In granting a preliminary injunction based on a violation of the Eighth Amendment, the court reasoned, "Hazelton adduced evidence that showed he was denied any modicum of human dignity when he was made to soil himself on the way to the bathroom because he was denied quick access to a nearby bathroom, or was made to soil himself in front of other people, including visiting family members, when he was refused the use of a nearby bathroom." *Id.* at *9.

Thus, *if* Defendants are knowingly forcing Ritchie to, more than rarely, defecate on his clothing in front of his cellmate, defecate in his incontinence briefs but then change his soiled briefs and wipe himself clean in front of his cellmate, or disimpact his feces in front of his cellmate, then Ritchie might well be able to establish an Eighth Amendment violation.

But on present record, the "if" condition has not been established. Starting with the first scenario, it is true that Ritchie reported to MRF healthcare that he was soiling his clothing on a

12

daily basis at one point. (R. 23, PID 191.) But this was before he was prescribed Depends. (*See* R. 23, PID 191, 194.) And although Ritchie stated that his Depends were "like a little strip" and not designed to hold feces, the record is to the contrary. In July 2016, Ritchie was prescribed Depends for "bowel" incontinence. (R. 23, PID 194.) Ritchie's special accommodation orders as of July 2016 similarly provide that he was prescribed incontinence "briefs." (R. 23, PID 196.) While these records are old, absent something to the contrary (and Ritchie has provided none), it is reasonable to assume that MRF is now giving Ritchie what it gave Ritchie then. Moreover, even if Ritchie's incontinence briefs do sometimes fail such that he soils his clothing, the record does not establish how frequently they fail—let alone how frequently they fail in front of his cellmate. Indeed, there is nothing in the record to suggest that the Depends healthcare staff were giving him did not work.

The factual record regarding the second scenario, i.e., when Ritchie's incontinence briefs work properly, but he must change the soiled briefs and clean himself afterwards, is also thin. Ritchie did indicate at the preliminary-injunction hearing that if he eats as he should, he would probably have three bowel movements per day. But Ritchie did not say how often he is able to make it to the bathroom as opposed to how often he soils his briefs. More importantly, Ritchie did not say how often he must change his soiled briefs and wipe himself in front of his cellmate. The testimony also established that there are bathrooms outside the Plaintiffs' cells. The Court understands why the disimpacting process would be difficult even in a private stall, but the same is not true for changing a Depends and engaging in any necessary clean-up.

As for disimpacting, Ritchie stated he must perform this task two to three times per month. But the record does not establish that he must disimpact in front of his cellmate. To the contrary, Howard (Ritchie's cellmate for the five months preceding the preliminary-injunction

13

hearing) avers, "[a]t times when Ritchie wanted to use the room I would leave." (R. 36, PID 357.) The Court is also troubled by the lack of any medical support. This "disimpacting" process is not routine. Cleaning out a body cavity is serious. And yet, before this lawsuit, none of the MRF medical staff seemed to be aware that Ritchie was doing this and the Court was shown no medical records that indicate he was doing it.

Due to the gaps in the record now before the Court, the Court cannot find that it is likely that Defendants are knowingly forcing Ritchie to suffer the type of indignity the Eighth Amendment prohibits.

**3.**

None of Ritchie's other Eighth Amendment theories—premised on cell space, sanitation, and safety—is likely to succeed.

Start with space. The medical records strongly suggest that Ritchie does not require a wheelchair. And if that is so, he has the same amount of cell space as the vast majority of other inmates at MRF. And even if Ritchie must use a wheelchair, Ritchie cites no law indicating that it is an Eighth Amendment violation to house two inmates, only one of whom uses a wheelchair, in a seven-by-ten-foot cell. *Cf. McCree v. Sherrod*, 408 F. App'x 990, 991 (7th Cir. 2011) (finding that prisoner had not stated an Eighth Amendment claim where three inmates were housed in 105-square-foot cell designed for two inmates). And at the preliminary-injunction hearing, Cooper testified that of the 25 or so inmates at MRF that use wheelchairs, 23 share a cell with another inmate. Accordingly, it is not likely that Ritchie's cell is unconstitutionally small.

Ritchie is also not likely to persuade a jury that sharing a cell with another inmate exposes him (as opposed to his cellmate) to unsanitary conditions prohibited by the Eighth Amendment. Aside from the humiliation which the Court has addressed, Ritchie has produced no

14

evidence indicating that the process of disimpacting or cleansing after soiling is less hygienic because he has a cellmate. True, Ritchie claims that when his "bowels are bleeding and all this stuff" it is better not to be exposed to another inmate's germs. But this conclusory statement does not establish a substantial risk of contracting his cellmate's bacteria or viruses. And the Eighth Amendment only prohibits Defendants from subjecting Ritchie to a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Anaya v. Herrington*, No. 1:09-CV-01653-AWI, 2011 WL 4971722, at *3 (E.D. Cal. Oct. 19, 2011) ("Plaintiff's allegations that he is more susceptible to diseases because he has rectal prolapses is speculative."), *report and recommendation adopted*, 2012 WL 1036893 (E.D. Cal. Mar. 27, 2012).

Finally, Ritchie asserts that being forced to share a cell exposes him to the risk of being assaulted by his cellmate. But the record reflects that the only serious assault that Ritchie has suffered while at MRF was when he was housed with a Level IV prisoner. Level IV is MDOC's second highest security level and, in general, "the higher the security level, the more security risk a prisoner presents in terms of manageability or escape potential." Michigan Department of Corrections, Definitions/Glossary, http://www.michigan.gov/corrections/0,4551,7-119-1441_1519---,00.html (last visited July 26, 2017). More importantly, for at least the first five months of 2017, Howard was Ritchie's cellmate and did not assault Ritchie. And the most recent filings submitted to the Court do not indicate changed circumstances. Ritchie has thus not shown that he is at a "substantial risk" of assault by his cellmate. *Farmer*, 511 U.S. at 834.

\* \* \*

In short, based on the record now before the Court, Ritchie does not have a "strong or substantial probability of ultimate success on the merits," *Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir. 2009).

**B.**

A district court may grant a preliminary injunction "even where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits." *Jones*, 569 F.3d at 277. But a plaintiff must at least show "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Id.*

Here, there are no "serious questions" as to Ritchie's First Amendment claim or his Eighth Amendment claim premised on sanitation, space, and safety. But whether Defendants are forcing Ritchie to suffer indignity prohibited by the Eighth Amendment arguably presents a "serious question" for a jury or this Court. But even if that is true, the present record does not permit the Court to find that Ritchie is suffering irreparable harm that decidedly outweighs harm to MDOC if the injunction issues.

To be sure, the prejudice to MDOC if an injunction issues is not great. The prejudice is the loss of one bed. While MDOC was "very tight on beds" in December 2016 (R. 23, PID 179), MDOC has produced nothing indicating that this is still true. In any event, MDOC itself acknowledges that "the economic harm to the MDOC for increasing by two the number of single-person cells will not be great compared to the overall budget of the MDOC." (R. 23, PID 152.) So the weight on MDOC's side of the scale is not great.

The problem for Ritchie is that the weight on his side of the scale is unknown. On the present record, it is not known how frequently Ritchie soils his clothing and, more importantly, how frequently that happens in front of his cellmate. As for when Ritchie's incontinence briefs work properly, it is not known how frequently he must change his soiled briefs and wipe himself in front of his cellmate. And while Ritchie has unequivocally stated that he disimpacts his feces two to three times per month (despite not telling anyone in healthcare), it appears that Ritchie is

16

able to perform this task when his cellmate is not present. And there must be times, beyond just meal time, when Ritchie's cellmate is out of the cell. Because it is entirely unclear how often Ritchie is forced to soil his clothing, cleanup after defecating, or disimpact his feces in the presence of his cellmate, the Court cannot assign significant weight to Ritchie's side of the scale. As such, the Court cannot say that there is "irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Jones*, 569 F.3d at 277.[1]

**IV.**

For the reasons provided, Plaintiffs' motion for a temporary restraining order and preliminary injunction (R. 9) is DENIED. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). Defendants may, for the time being, house Ritchie and Berryman in a cell with another inmate.

In reaching this conclusion, the Court stresses two points. Thus far, Defendants have treated Plaintiffs' request for a single-person cell as a medical issue. In response to Plaintiffs' complaints, MRF has either searched Plaintiffs medical records for a special accommodation or has had medical staff evaluate Plaintiffs' need for a single-person cell. As this opinion hopefully makes clear, Plaintiffs seek a single-person cell for both medical and non-medical reasons. The Court trusts that MRF officials are now attuned to the possibility that Plaintiffs experience humiliation as a result of having to soil themselves or disimpact their feces in front of other inmates.

---

[1] The Court notes that in balancing the harms, it is relevant that Ritchie's self-soiling or disimpacting is potentially harmful to Ritchie's cellmate. *See DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment."). But, as stated, it is not at all clear how often Ritchie's cellmate is exposed to waste.

17

This leads to the second point. At the preliminary-injunction hearing, Kim Farris (a physician assistant who works at MRF) indicated that inmates who need to manually stimulate defecation can enroll in a "bowel program." Farris stated that those enrolled could have their cells to themselves for perhaps an hour to stimulate defecation in privacy. After the preliminary-injunction hearing, the Court entered an order stating:

> At the recently-held preliminary injunction hearing in this matter, the possibility of Plaintiffs being given some time alone in their cells (i.e., their cellmate would be required to leave) while they perform their fecal extraction was discussed. As this accommodation would substantially reduce the humiliation that Plaintiffs allegedly feel by having to disimpact their bowels in front of their cellmates (and would seemingly benefit the cellmate), the availability of this accommodation is relevant to this Court's decision to award or deny a preliminary injunction.

(R. 38, PID 375.) The Court asked both Plaintiffs and Defendants to inform the Court (1) whether Ritchie or Berryman had "requested time to be alone in his cell" during fecal extraction and (2) whether MRF had "otherwise offered" Ritchie or Berryman time to be alone in his cell during fecal extraction. (R. 38, PID 375–76.)

The Court is not impressed with Defendants' response. It appears that as soon as Plaintiffs returned to MRF after the hearing, both sought the bowel program. (R. 49, PID 450, 453.) Yet, in their response to the Court's order, Defendants stated, "Since [the preliminary-injunction] hearing, neither Ritchie nor Berryman has requested an evaluation for participation in the Bowel Program described by PA Farris or any other accommodation associated with their alleged fecal extraction needs." (R. 39, PID 378.) Defendants also failed to answer the Court's second question as to whether MRF had "otherwise offered" Plaintiffs time to be alone in their cell during fecal extraction. (*See* R. 39, PID 378–79.)

The Court encourages MRF staff to explore with Plaintiffs arrangements that would safely lessen the potential humiliation and other difficulties Plaintiffs face as a result of their inability to control their bowel movements or their need to disimpact their feces.

SO ORDERED.

Dated: July 31, 2017

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
U.S. DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2017.

s/Keisha Jackson  
Case Manager